## MERRILL ENGINEERING CO. v. UNITED STATES.

### No. 483.

District Court, S. D. Mississippi, W. D.

March 23, 1931.

Brunini & Hirsch, of Vicksburg, Miss., for plaintiff.

B. F. Cameron, U. S. Atty., of Meridian, Miss., for defendant.

HOLMES, District Judge.

This suit was filed against the United States by the Merrill Engineering Company, a corporation organized under the laws of the state of Mississippi, seeking to recover damages for breach of contract for the construction of a vitrified brick pavement on the bridge roadway of Wilson Dam, on the Tennessee river, near Florence, Ala. ·

By written agreement, duly entered into between the parties, the plaintiff undertook to furnish all necessary materials, labor, tools, and appliances, and to construct a brick pavement in accordance with the specifications upon a concrete base provided by the United States, for a consideration of $17,231, which the latter agreed to pay and subsequently paid, the controversy here being with reference to extra compensation for substantial changes alleged to have been made by the defendant and required of the plaintiff in the execution of the work.

The specifications called for a vitrified brick pavement, laid upon a one-inch sand cushion over a concrete base, the bricks to be laid with a joint all around of not more than one-fourth of an inch, and, after the roadway had been rolled and defects corrected, for the joints to be filled with hot asphalt, which should be rolled into the joints with rubber-edged squeegees, operated slowly backward and forward until the joints were full and only a thin coating of asphalt remained on the surface of the bricks. Then a dressing consisting of a thin coating of dry sand was immediately to be placed on the surface of the pavement.

Two days after the work began the consulting engineer inspected the pavement, a short section at the north end of the dam having been completed by the contractor under the supervision of the consulting engineer's

inspector who had inspected and approved the bricks at Murphysboro, Ill., before shipment. The consulting engineer found that, in complying with the requirements of a maximum joint of one-fourth inch, a considerable number of bricks were actually in contact, in which case the hot asphalt did not penetrate down such joints to the sand cushion. This was due to the fact that the bricks, though complying with the specifications, were not perfectly true and when laid with a maximum joint of one-fourth inch the contacting of occasional bricks could not be avoided.

Thereupon the consulting engineer personally directed the contractor's superintendent to lay the bricks so that the asphalt filler would form an asphalt joint down to the cushion of sand around all four faces of every brick. To accomplish this the contractor had to insert a one-eighth inch strip of wood between each course of bricks which he removed just prior to filling with hot asphalt. The results of the consulting engineer's orders were:

(1) The maximum width of joints between bricks was about three-fourths of an inch and many joints were one-half an inch.

(2) The joints could not be filled with one pouring of hot asphalt over the pavement, two pourings being necessary.

(3) The thickness of asphalt on top of the bricks was about twice that contemplated by the specifications.

These were substantial changes in the specifications, which not only materially increased the cost of the work, but produced an inferior road. The contractor complained to the contracting officer, who reported the matter to the chief of engineers, and in due time the United States receded from the position taken by its consulting engineer, and the contractor was permitted to finish the work as originally begun in accordance with the specifications. In the meantime, he had completed about one-half of the pavement and sustained the loss sued for, amounting to $2,185.84, for extra labor and materials necessarily incurred in complying with the requirements not set out in the contract.

The plaintiff vigorously dissented from the interpretation of the specifications by the consulting engineer, and complained to the contracting officer with the result stated, but it did not comply with section 38 of the specifications, which is as follows: "38. Claims and Protests. If the contractor considers any work required of him to be outside the requirements of the contract, or considers any record or ruling of an inspector or the contracting officer as unfair, he shall ask the contracting officer for written instructions or decision immediately, and then file a written protest with the contracting officer against the same within five days thereafter, or be considered as having accepted the record or ruling."

To obviate this section as a defense, an act, entitled "An Act For The Relief Of The Merrill Engineering Company," was passed by Congress and approved March 4, 1929 (c. 725, 45 Stat. 2379). It provides that said section 38 shall not constitute a defense to the United States in any suit brought against it within four months after its enactment by the Merrill Engineering Company, of Jackson, Miss., to recover compensation for extra work performed by such company under the contract mentioned.

To this action, subsequently filed within the four months, there is a plea of the general issue under which the defendant gives notice it will prove at the trial that the extra work was not required in writing by the contracting officer, and prices agreed upon and approved by the chief of engineers, as required by article 7 of the contract and section 37 of the specifications, which are set out in the notice. Under the Mississippi practice the plea of the general issue puts the plaintiff to the proof of its claim upon the merits, while the notice thereunder is equivalent to special pleas in bar for failure to comply with article 7 and section 37.

On the merits the case may be quickly disposed of, as the testimony shows that the requirements of the consulting engineer, representing the government in charge of the work, enforced upon the plaintiff a departure in the construction of the roadway from the true interpretation of the specifications. He seems to have been under the impression that the bricks were laid too closely together, as he states, in answer to an interrogatory in his deposition that the contract required that the bricks should always be at least one-fourth of an inch open in the joints all the way around for the reception of the asphalt filling. There is no such requirement in the contract or specifications. On the contrary, the specifications provide that the maximum space between the bricks shall not exceed one-fourth of an inch. His requirements compelled the plaintiff to lay one row of bricks at a time, with the insertion of a one-eighth inch strip between each row. This reduced

the brick-laying operations from one thousand square yards per day to two hundred square yards, and materially increased the labor cost. The extra wide joints between the rows of bricks and at the end joints increased the amount of asphalt 66 per cent. The extra amount of asphalt increased the labor and fuel cost in applying it to the bricks. The defendant's engineer further required the plaintiff to cover the bricks with plank and to operate a steel roller upon the plank. This did not produce the best results. It was an unusual manner of laying a vitrified brick pavement, and not in accordance with the best engineering thought and practice, as well as contrary to the specifications.

The technical defenses are that the plaintiff is precluded from recovery, the special act of Congress notwithstanding, by other provisions of the contract and specifications, as it failed to agree in writing with the contracting officer upon the prices and quantities of the extra work and material. Article 7 of the contract prohibits the making of any claim by the contractor on account of extra work unless this is done, while section 37 of the specifications is of like tenor.

A careful consideration of these and other provisions of the contract and specifications leads to these conclusions:

(1) That the inspector appointed by the contracting officer had power to reject any work, workmanship, or materials which in his opinion did not conform to the specifications and plans.

(2) That anything so rejected by the inspector should be kept out of or removed from the finished work, unless in each particular case the decision of the inspector should be overruled by the contracting officer.

(3) That the decision of such contracting officer with reference to the quality or quantity of the work, workmanship, or materials was final.

(4) That the contracting officer might make such minor changes in the execution of the work as in his judgment might be necessary or expedient to carry out the intent of the contract, provided the work had not already been executed and that the cost to the contractor should not be materially increased thereby.

(5) That no increase in price over the contract price would be paid to the contractor on account of minor changes.

(6) That the defendant agreed that its inspector or contracting officer would make no change which would materially affect the cost of doing the work.

(7) That the contract price could not be varied except in writing approved by the chief of engineers.

(8) That if the inspector or contracting officer should abuse the broad powers given him and demand of the contractor any work outside of the requirements of the contract, or make any unfair ruling with reference thereto, such as arbitrarily rejecting work, workmanship, or material which came up to the specifications, it was the duty of the contractor to request written instructions immediately and then to file a written protest with the contracting officer against the same within five days thereafter, and that, upon failure to do so, the contractor should be considered as having accepted such ruling.

(9) That items of extra work should be expressly agreed upon in writing by the contracting parties and approved by the chief of engineers.

(10) That it was a breach of contract by the defendant for its inspector to make major changes in the specifications which materially increased the cost of the work to the contractor.

These provisions have two main objects:

(1) To protect the United States from claims by the contractor for additional compensation for extra work or materials, or both, based upon alleged contracts, express or implied, oral or written.

(2) To protect the contractor from major changes in the specifications by the inspector of the defendant which would materially increase the cost of the work.

The theory underlying them seems to be that the contracting parties, having agreed upon the work and material for the job, and the total price to be paid for it, desired to guard against an increase in the contract price in the guise of extra work or materials unless duly agreed to in writing by the authorized representatives of the government and the contractor, and, further, having appointed the agent of one of the parties to the contract as arbiter or judge in cases of disputes over qualities or quantities of workmanship or materials, or changes in the specifications, and, having, under article 2 of the contract, made the decision of the agent of one of the parties final in any such dispute, the contracting parties evidently recognized the fundamental maxim of justice that no one should be a final judge in his own case, and, therefore, inserted in section 38 of the specifications a provision for the express protection of the contractor against an unfair, arbitrary, or oppressive ruling of the inspec-

tor or contracting officer who was appointed by, and the agent of, the other party to the contract. The parties evidently recognized that, notwithstanding the contract made the decision of one of the parties final as to certain disputes, the provision, as a matter of law, would be ineffective in any material way to work injustice or oppression.

Section 38 provides a reasonable method for the contractor to escape oppression, to wit, by demanding written instructions and filing a written protest, which, if he fails to take advantage of, will put him in the position of having accepted the adverse ruling or decision, however, harsh or confiscatory. If the contractor had asked written instructions, and then filed a written protest, it would not be reasonable to contend that the plaintiff could not recover because of the absence of a formal written agreement in strict accordance with article 7 of the contract, an agreement which the proof shows it would have been impossible to reach. What would be the use of asking written instructions and filing a written protest if article 7 barred all claims for damages of every nature? The parties will not be held to have intended that, by arbitrarily insisting on work outside the requirements of the contract, and by refusing to agree to extra pay, it was within the power of one of the parties to enforce its unrestrained will upon the other.

Therefore, the conclusion is inescapable that a compliance with section 38 in a proper case renders inapplicable article 7 and section 37. There is no conflict between them. They were simply intended to operate within separate spheres and under different circumstances; the latter where the claim for extra compensation is predicated upon an alleged new contract, express or implied, oral or written, and the former where it is founded in a claim for an alleged breach of the original contract flowing from the wrongful act of the contracting officer in abusing the unlimited power reposed in him by the parties to direct fairly and impartially the execution of the contract according to its tenor and intent.

Having agreed that, under the power to make minor changes, it would make none that would materially increase the cost of the work, it was a breach of the original contract for the defendant to insist upon material departures from the specifications which caused an added expense to the contractor in a substantial amount. The claim of the Merrill Engineering Company arises out of this breach of contract, which operated to its damage by increasing the cost of the work as a direct and proximate result. There was no opportunity to agree upon extra compensation. Therefore, if the contractor had required written instructions and filed a written protest, it cannot be doubted that no technicality would stand in the way of a suit on the merits for the damages necessarily sustained by following the instructions so given.

Conceiving section 38 to be a bar to this action, the act for the relief of the plaintiff was passed by Congress waiving it as a defense. It was within the power of the legislative department of the government, and its validity is not assailed here. I conclude, therefore, that the contractor is in the attitude of having complied with section 38, and that the other provisions of the contract set up in bar do not preclude a consideration of the claim upon its merits.

A judgment for the plaintiff may be entered accordingly.